UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA BARAJAS,<br><br>        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:23-cv-00342-CDB (SS)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 13) |

Plaintiff Laura Barajas ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits under the Social Security Act ("SSA" or "Act"). (Doc. 1). The matter is before the Court on the Administrative Record (Doc. 11, "AR") and the parties' briefs (Docs. 13, 16, 17), which were submitted without oral argument. Upon review of the record, the Court finds and rules as follows.[1]

## I.    **BACKGROUND**

### A.    **Administrative Proceedings and ALJ's Decision**

On June 8, 2020, Plaintiff filed applications for disability, disability insurance benefits, and supplemental security income with an alleged disability onset date of April 4, 2019. (AR 22).

---

[1] On April 3, 2023, after the parties consented to the jurisdiction of a U.S. Magistrate Judge for all further proceedings pursuant to 28 U.S.C. § 636(c)(1), this action was reassigned to the undersigned. (Doc. 10).

Plaintiff's claim was initially denied on December 2, 2020, and again upon reconsideration on March 22, 2021. *Id.* Plaintiff requested a hearing before an Administrative Law Judge on April 19, 2021. *Id.* John Loughlin, the Administrative Law Judge ("ALJ"), held a telephone hearing on July 6, 2022, during which Plaintiff, with the assistance of a Spanish interpreter, and impartial vocational expert Deborah Dutton-Lambert ("VE") testified. *Id.* The ALJ issued an unfavorable decision on August 8, 2022, finding Plaintiff was not disabled. (AR 16, 25-37). The Appeals Council denied Plaintiff's request for review on January 3, 2023, rendering the ALJ's decision as the final decision of the Commissioner. (AR 1). Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision. (Doc. 1).

In the decision, the ALJ considered Plaintiff's claims using the five-step sequential evaluation required by 20 C.F.R. §§ 404.1520(a) and 416.920(a). (AR 25-37). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 4, 2019, the alleged onset date. (AR 25).

At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments ("MDIs") which significantly limit the ability to perform basic work activities as required by Social Security Ruling ("SSR") 85-28: obesity; lumbar facet arthropathy/spondylosis; left knee degenerative joint disease; left ankle degenerative joint disease, status-post surgery and superficial peroneal nerve decompression; asthma; chronic obstructive pulmonary disease (COPD); major depressive disorder; generalized anxiety disorder. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (AR 26). The ALJ considered the severity of Plaintiff's mental impairments, considering whether the four broad functional areas of mental functioning listed in the "paragraph B" criteria are satisfied.[2] (AR 28). Because Plaintiff's mental impairments did not

---

[2] The "paragraph B" criteria evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The severity of the limitation a claimant has in each of the

2

cause at least two "marked" limitations or one "extreme" limitation, and do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities, the ALJ found the paragraph B criteria were not satisfied and that the mental impairments are non-severe. *Id*. The ALJ also found that the evidence in this case fails to establish the presence of "paragraph C" criteria.[3]  (AR 28-29).

Prior to step four, the ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) except for the following non-exertional limitations:

> [Plaintiff] can occasionally balance on uneven surfaces or terrain, can occasionally stoop, kneel, crouch, or crawl, can occasionally climb stairs or ramps and can occasionally climb ladders, ropes or scaffolds.  She can occasionally be exposed to vibrations, unprotected heights or moving machinery parts, and can have occasional exposure to atmospheric conditions, as defined in the DOT and SCO, such as dust, noxious odors or fumes, poor ventilation, extreme cold, extreme heat, humidity, or wetness.  She is able to understand and remember simple instructions, make simple work-related decisions, and carry-out simple instructions.  She cannot perform work which requires a specific production rate, such as assembly line work or hourly quota work, can occasionally deal with changes in a routine work setting, and can occasionally deal with supervisors, coworkers and/or the public.

(AR 29).

In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ noted he followed the two-step process as set forth in 20 C.F.R. § 404.1529 and § 416.929, SSR 16-3p, and 20 C.F.R. § 404.1520c and § 416.920c.  (AR 29-30).  The ALJ noted Plaintiff's allegations of disability from the record:

> [Plaintiff] is alleging disability related to asthma, chronic knee arthritis, left ankle pain, hip pain, slipped spinal discs, cholesterol, high blood pressure, depression,

---

four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme." *Id*.  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning. *Id*.

[3] "Paragraph C," subsection (1) requires a "highly structured setting that is ongoing that diminishes the signs and symptoms of [Plaintiff's] mental disorder." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(C)(1). "Paragraph C," subsection (2) requires that Plaintiff "have minimal capacity to adapt to changes in [Plaintiff's] environment or to demands that are not already part of [Plaintiff's] daily life." *Id.* at subsection (C)(2).

anxiety, PTSD, severe allergies, and insomnia; with assistance from a family member [Plaintiff] completed a pre-hearing Function Report which indicated that she is able to stand for fifteen minutes and walk for twenty minutes at a time; she cannot sit for prolonged periods or bend down because of her hip, and feels limited to lifting no more than five pounds; she also checked boxes indicating problems with squatting, reaching, kneeling, stair-climbing, memory, task completion, and concentration; she needs help with hygiene and self-care activities involving the lower extremities; she drives but needs someone with her because she fainted one time; she alleged diminished social activities and friendships but stated that she has no problems getting along with others; and she feels anxious around authority figures and does not handle stress or routine changes very well. At the hearing, she testified that she has used a prescribed cane for one year and a walker for three months; she testified that she lives at home with her children, who assist her with daily activities; and she testified about occasional memory issues and indicated that she has experienced panic attacks once or twice per week.

(AR 30) (citing Exs. B2E, B5E; Hearing Testimony). Upon consideration of the evidence, the ALJ found that Plaintiff's MDIs could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of symptoms are not entirely consistent with the medical evidence and other record evidence. (AR 30).

The ALJ, considering the record of Plaintiff's hearing testimony, medical evidence, examination findings, treatment notes, mental health treatment history, activities of daily living ("ADLs"), prior administrative medical findings, and third-party statement of Plaintiff's daughter, determined that the record does not support limitations that would prevent her from working within the RFC. (AR 30-35). The ALJ concluded that the assessed RFC is supported by the evidence. (AR 35).

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work under 20 C.F.R. §§ 404.1565 and 416.965. *Id.* The ALJ found that Plaintiff was a younger individual on the alleged disability onset date and has a limited education. *Id.* The ALJ found that transferability of job skills is not material to the determination of disability based on his finding that Plaintiff is not disabled whether or not she has transferable job skills under SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2. (AR 35).

At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (AR 36). The ALJ cited collator operator, photocopy machine operator, and merchandise marker based on the testimony of the vocational

expert, noting that these SVP 2 jobs do not require English.  (AR 36-37).  The ALJ therefore concluded a finding of "not disabled" was appropriate under sections 216(i) and 223(d) of the Act from April 4, 2019, through the date of the decision.  (AR 37).

### B.    Medical Record and Hearing Testimony

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

## II.    LEGAL STANDARD

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id*. (quotation and citation omitted).  "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely.  Social Security Act § 205, 42 U.S.C. § 405(g).  In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless.  *Id.*  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id*.

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual

functional capacity," defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id*.

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## III.    ISSUES AND ANALYSIS[4]

Plaintiff presents a single claim of error for this Court's review: whether the ALJ failed to properly evaluate the medical opinion of Sanjay J. Chauhan, M.D., Plaintiff's examining board certified neurologist. (Doc. 13 at 13-19).

### 1.    Parties' Contentions

Plaintiff contends that the ALJ's rejection of Dr. Chauhan's medical opinion is "legally incorrect" because the ALJ deemed the relevance of the opinion "to be 'diminished' simply because the medical evidence was derived from a workers' compensation proceeding." (Doc. 13 at 14-15).

---

[4] Filings are referenced herein according to the associated CM/ECF-designated pagination.

Plaintiff argues the ALJ failed to properly discuss the consistency and supportability of the opinion as required under the governing regulations and Ninth Circuit law. *Id.* at 15-18). Plaintiff asserts the ALJ's error in failing to properly evaluate the persuasiveness of Dr. Chauhan's opinion is not harmless such that "[h]ad [the] opinion been fully credited[,] a different determination could well have been reached" as to the vocational expert's determination. *Id.* at 18-19.

Defendant contends that substantial evidence supports the ALJ's finding that Plaintiff was not disabled as the ALJ reasonably explained how Dr. Chauhan's opinions were "contradicted by both the longitudinal objective evidence and Dr. Chauhan's own examination findings." (Doc. 16 at 1). Defendant argues that the ALJ "appropriately noted that Dr. Chauhan's opinions were issued under a different agency's rules and definitions, further reducing their probative value" and the ALJ's finding that the opinions were unpersuasive is proper. *Id.*

Plaintiff argues in reply that the ALJ failed to apply the correct legal standards in evaluating Dr. Chauhan's medical opinion. (Doc. 17 at 2). Plaintiff contends the ALJ failed to identify evidence to support his finding that Dr. Chauhan's opinion "grossly exceeds the objective medical evidence" and argues Defendant is incorrect to assert that an ALJ may adequately satisfy his duty to articulate the supportability and consistency analysis by reference to other portions of the ALJ's opinion. *Id.* at 3.

2.   Governing Authority

Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the agency's newest regulations applicable to an ALJ's evaluation of medical opinions. 20 C.F.R. § 416.920c. Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [a plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, the regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. *See* 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); *Trevizo v. Berryhill*,

8

871 F.3d 664, 675 (9th Cir. 2017).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). In other words, "[s]upportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 404.1520c(b)(2)-(3). Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Nonetheless, the Court must determine whether the ALJ adequately explained "how [he] considered the supportability and consistency factors" relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. *Woods*, 32 F.4th at 792-93.

///

9

3.    Dr. Chauhan's Opinion

On March 31, 2020, Dr. Chauhan, a state appointed medical examiner and neurologist, held an initial evaluation via a virtual telehealth visit with Plaintiff, noting that Plaintiff "is a right handed female with complaints of lower back pain, left knee pain, left ankle pain, intermittent pain in the left hip after she was injured on 09/28/13." (AR 612). Dr. Chauhan noted that Plaintiff was referred to him "for further treatment" since her previous provider "was very busy and was not able to continue to see [Plaintiff]." (AR 613).

Dr. Chauhan noted Plaintiff's current complaints of pain in her lower back, left ankle, left knee, and left hip. *Id.* He noted Plaintiff's current and past medications of Tramadol "[four] tablets per day, medication for hypertension and high cholesterol." (AR 614). He noted his review of the medical record, including of Dr. Daniel Ovadia's initial AME report from August 30, 2016, an MRI of the left ankle from January 12, 2017, a nuclear medicine scan from May 8, 2017, Dr. Ovadia's AME supplemental report from June 13, 2017, and a medical report of Dr. John Kirby from August 29, 2018. (AR 614-15). Dr. Chauhan noted Plaintiff's previous injuries, past medical/surgical history, allergies, social history regarding drug and alcohol use, work history, and work history since injury. (AR 615-16). Dr. Chauhan remarked that Plaintiff had diagnoses of low back pain, left lumbar radiculitis, left knee pain, left hip trochanteric bursitis, and status post left ankle surgery for scar removal on August 20, 2014. (AR 616). Dr. Chauhan discussed that Plaintiff's mechanism of injury is consistent with Plaintiff's diagnoses and complaints, that she received "conservative care initially and ultimately required surgery on 08/20/14 to the left ankle with scar removal because of the swelling which did help but not completely" and "[i]t was felt [Plaintiff] required work restrictions for the affected regions." *Id.*

Dr. Chauhan assessed that Plaintiff "has permanent work restrictions" from March 31, 2020, ongoing, including: no lifting more than five pounds, no more than two times per 60 minutes; no pushing and pulling more than 10 pounds, no more than two times per 60 minutes; no bending, stooping, twisting of the back more than once per 60 minutes; precluded from kneeling, squatting, crouching, crawling, climbing ladders, and standing and walking more than 30 minutes per hour. (AR 617). Dr. Chauhan provided a recommendation to "continue to authorize Tramadol 50mg

10

q.i.d. #120 per month" as "this is providing pain relief i.e. pain levels from moderate to severe become mild" and Plaintiff "does benefit with function in order to stand, walk and do house chores." (AR 618).  He opined that "[t]here are no significant side effects and [Plaintiff] will sign an opioid contract" and she "will be monitored with periodic urine drug screen." *Id.*  He also recommended that Plaintiff "continue home exercises and activities as tolerated" with follow up in two months. *Id.*

Dr. Chauhan conducted periodic follow-up telehealth examinations with Plaintiff from May 2020 to March 2022.  *See, e.g.* (AR 763-73 [December 2, 2020]; 791-800 [September 2, 2020]; 805-14 [July 8, 2020]; 1095-1106 [July 27, 2021]; 1111-21 [June 2, 2021]; 1138-48 [February 23, 2021]; 1525-36 [January 5, 2022]; 1539-51 [March 1, 2022]; 1554-65 [September 21, 2021]).  Dr. Chauhan noted various findings from his follow-up examinations.  For instance, at the examination dated September 2, 2020, Dr. Chauhan noted that Plaintiff "did receive [a] hinge brace and cane which are helpful" and "[s]he will use these when she is moving about."  (AR 799).  At the examination dated December 2, 2020, Dr. Chauhan noted that Plaintiff "does use a cane to walk." (AR 764).  He similarly noted at a February 23, 2021, examination that Plaintiff "uses a cane to ambulate as well as hinged knee brace for the left knee" and that "[h]er Primary Care Physician ordered a back brace for her back[.]"  (AR 1139).  At the examination dated June 2, 2021, Dr. Chauhan noted that that Dr. Aryan's report from April 2, 2021, reportedly recommended epidural injections followed by physical therapy before surgical options are explored.  (AR 1119).

4.    Analysis

The ALJ found the medical opinion of Dr. Chauhan unpersuasive, noting that although Dr. Chauhan has examined Plaintiff "numerous times, the workers compensation purpose underlying these evaluations indicates that [Dr. Chauhan's] opinions applied different program rules and definitions, diminishing their relevance here" in the social security disability context.  (AR 34) (citing Exs. B2F, B5F, B9F, B17F).  The ALJ found that Dr. Chauhan's ongoing functional assessment during the relevant period "grossly exceeds the objective medical evidence and [Dr. Chauhan's] own examination findings." *Id.*  The ALJ noted that Dr. Chauhan's findings from his January 2021 report and September 2021 report showed Plaintiff had improved lumber range of

11

motion. *Id.* (citing Exs. B5F, B17F).  The ALJ found that "although Dr. Chauhan later submitted requests for insurance approval of a cane and walker in early 2022, the examination findings did not substantially change and he did not alter his opinion of [Plaintiff's] 'work and disability status' to include an assistive device[.]"  *Id.* (citing Ex. B17).  The ALJ therefore found Dr. Chauhan's "overly restrictive, sub-sedentary limitations and [] recommendation for assistive devices wholly unpersuasive." *Id.*

To the extent Defendant argues that Dr. Chauhan's opinion should be disregarded because the opinion was procured for a worker's compensation purpose, that rationale is unavailing.  An ALJ "may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings."  *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1103 (C.D. Cal. 2002); *see Shockency v. Berryhill*, No. 2:17-cv-2427 EFB, 2019 WL 1359496, at *5 (E.D. Cal. Mar. 26, 2019) ("[A]n ALJ may not disregard a medical opinion simply because it was proffered for a purpose other than assessing eligibility for disability benefits.") (citation omitted).

But here, the ALJ appropriately considered the supportability and consistency of Dr. Chauhan's opinion in discounting the opinion and assessed limitations as unpersuasive.  As to supportability, the ALJ found the opinion "grossly exceeds the objective medical evidence and [Dr. Chauhan's] own examination findings[,]" that the "sub-sedentary limitations" assessed are "overly restrictive" and that the "recommendation for assistive devices" is "wholly unpersuasive."  (AR 34).  His conclusions in this regard were supported by record evidence, which he cited, and his reasoning.  The ALJ explained that Dr. Chauhan's opinions—including of functional and postural limitations and limitations to walking and standing for no more than 30 minutes per hour (*see* AR 617)—were unsupported by Dr. Chauhan's examination findings by referencing to findings from a January 2021 report which showed Plaintiff had normal examination findings and no use of assistive ambulatory devices, and from a September 2021 report which "contained similar data" and that the report "reflected improving lumber range of motion[.]"  (AR 34) (citing Ex. B17F).  The ALJ properly concluded that these findings did not support the assessed limitations.  *See Woods*, 32 F.4th at 791-92; *see also Reddick*, 157 F.3d at 725 (ALJ must "set forth his own

interpretations and explain why they, rather than the doctors, are correct."). Though the ALJ acknowledged that Dr. Chauhan submitted requests for insurance approval for a cane and a walker in his examination dated January 5, 2022, the ALJ further discounted Dr. Chauhan's assessment that Plaintiff be recommended for an assistive ambulatory device by noting that Dr. Chauhan's normal examination findings "did not substantially change" and that he did not include any recommendation thereto in the work and disability status section of the examination report. Indeed, the ALJ explained earlier in the decision that though "some examination notes" showed "[Plaintiff] began using a cane and a hinged knee brace in 2021, … it does not appear to have been prescribed or medically necessary for ambulation or balance" and though she was recommended by Dr. Chauhan for a walker in 2022, she was denied worker's compensation coverage and has since had treatment consisting of "mild options such as acupuncture to the lumbar spine, physical therapy, a therapeutic body pillow, and oral pain medications such as Tramadol[.]" (AR 31) (citing Exs. B5F, B9F, B13F, B17F). The ALJ explained how the medical record "does not support the medical necessity of any assistive device" with reference to record evidence from July 2019 to January 2022, concluding that "[t]here are no objective findings to support the medical necessity of an assistive device, such as instability, muscle atrophy, significant muscle weakness, decreased sensation, decreased reflexes or problems associated with balance or coordination." (AR 31-32).

Contrary to Plaintiff's argument in reply (Doc. 17 at 2-3), where it is clear the ALJ incorporates in his analysis of the supportability and consistency factors certain "examination findings" that he addresses in another portion of the opinion, the Court properly may account for that evidence in determining whether the ALJ's conclusions are supported by substantial evidence. *See Andy v. Kijakazi*, No. 22-35934, 2023 WL 6620299, at *2 (9th Cir. Oct. 11, 2023) ("although the ALJ's analysis of the supportability and consistency of Dr. Drenguis;s opinion is summarized in one sentence, at other points throughout his decision the ALJ clearly articulated why Andy's complaints about his right shoulder were not supported by the record") (citing *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022)); *Ayers v. Comm'r of Soc. Sec.*, No. 1:25-cv-00516-SAB, 2026 WL 787926, at *6 (E.D. Cal. Mar. 20, 20260 ("Though discussed in another section of the opinion, the ALJ clearly incorporated these findings into the consistency analysis of Dr.

Zimmerman."). Therefore, the ALJ sufficiently explained how he considered the supportability of Dr. Chauhan's opinion in discounting the opinion. *Woods*, 32 F.4th at 792-93.

The ALJ likewise properly considered the consistency of Dr. Chauhan's opinion in finding the opinion "grossly exceeds the objective medical evidence and his own examination findings" for the same reasons noted above and detailed throughout the decision, such as the ALJ's consideration of medical evidence that "have failed to provide a basis for [Plaintiff's] claims of standing and walking limitations and wholly fails to support any medically necessary assistive devices like a cane or walker[.]" (AR 32) (citing Hearing Testimony; Exs. B5E, B5F, B9F, B11F, B15F, B17F). This analysis comports with the applicable standards setting forth 'supportability' and 'consistency' as the most important factors when evaluating opinions in the record. *See Donnelly v. Comm'r of Soc. Sec.*, No. 1:21-cv-01117-CDB (SS), 2025 WL 1473954, at *9 (E.D. Cal. May 22, 2025) (finding ALJ's analysis of medical records sufficiently supported his conclusion that physician's assessment of limitations understated the claimant's abilities) (citing 20 C.F.R. § 404.1520c(b)(2)). Therefore, the ALJ properly addressed how she considered the supportability and consistency of Dr. Chauhan's opinions in finding the opinion unpersuasive. *See id; Woods*, 32 F. 4th at 791-92; *see also Jones v. Saul*, No. 2:19-CV-01273 AC, 2021 WL 620475, at *8 (E.D. Cal. Feb. 17, 2021) ("the ALJ must explain how the agency considered the supportability and consistency of a medical opinion.… [T]he ALJ [is not allowed] to forego articulation of their 'reason or reasons' altogether; rather, [the new regulations] provide specific articulation requirements.").

## IV.    CONCLUSION AND ORDER

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 13) is DENIED; and

2. The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and to close this case.

IT IS SO ORDERED.

Dated:    **May 26, 2026**                          _____

UNITED STATES MAGISTRATE JUDGE

14